UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------x
ZACHARY BROWN,

                         Plaintiff,                        10 Civ. 3104 (PKC)

         -against-

                                               MEMORANDUM
                                        AND ORDER

CITY OF NEW YORK, RHONDA JOHNSON,
CATHY NONAS, and LYNN SILVER,

                        Defendants.
-----------------------------------------------------------x

P. KEVIN CASTEL, District Judge:

              Plaintiff Zachary Brown brings this suit for employment discrimination under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., as amended by the Civil Rights Act of 1991 ("Title VII"), the Age Discrimination in Employment Act of 1967, 29 U.S.C. § 721 et seq. ("ADEA"), 42 U.S.C. §§ 1981 and1983, the New York State Human Rights Law, N.Y. Exec. L. § 290 et seq. ("NYSHRL"), the New York City Human Rights Law, N.Y.C. Admin. Code § 8-101 et seq. ("NYCHRL"), and the Due Process clauses of both the U.S. and New York state constitutions.  Plaintiff, an African-American male, claims that the defendants terminated him from his employment with the New York City Department of Health and Mental Health on the basis of his race, age, and gender.  Discovery in this case is complete, and defendants have moved for summary judgment pursuant to Rule 56, FED. R. CIV. P.  For the reasons set forth below, defendants' motion is granted.

BACKGROUND

The following facts are either not disputed by plaintiff or, where there is a dispute, plaintiff's evidence is accepted as true and all reasonable inferences are drawn in his favor as non-movant.  See, e.g., Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011).

I.      Plaintiff's Employment with the City of New York

Plaintiff is an African-American male born in 1957.  (Defendants' Local Civil Rule 56.1 Statement of Undisputed Facts ("Defs. 56.1") ¶¶ 2-3; Plaintiff's Response to Defendants' Local Rule 56.1 Statement ("Pl. 56.1 Resp.") ¶¶ 2-3.)  Plaintiff began working for the New York City Department of Health and Mental Hygiene ("DHMH") as a provisional employee on February 6, 2006.  (Defs. 56.1 ¶ 7; Pl. 56.1 Resp. ¶ 7.)  The DHMH is a civil service agency with the City of New York.

The position plaintiff accepted in February 2006 was as a "research assistant" in the DHMH's Asthma Initiative Program.  (Defs. 56.1 ¶ 8; Pl. 56.1 Resp. ¶ 8.)  Lynn Silver, Assistant Commissioner of the Bureau of Chronic Disease Prevention and Control and one of the defendants in this case, approved the creation of the position and the decision to hire plaintiff.  (Id.)  In 2007, the DHMH established a new position of "Training Coordinator" for its "Physical Activity and Nutrition Program."  (Defs. 56.1 ¶ 10; Pl. 56.1 Resp. ¶ 10.)  Plaintiff was promoted to Training Coordinator on June 25, 2007, receiving a salary increase of approximately $11,000.  (Defs. 56.1 ¶¶ 10-12; Pl. 56.1 Resp. ¶¶ 10-12; Pl.'s Dep. at 45.)  Defendant Silver and Candace Young, plaintiff's then-immediate supervisor, promoted plaintiff to this new position.  (Defs. 56.1 ¶ 11; Pl. 56.1 Resp. ¶ 11.)

As Training Coordinator, plaintiff was a provisional employee of the City of New York and reported directly to defendant Rhonda Walsh, a Training Director with the DHMH.[1] (Defs. 56.1 ¶¶ 13-14; Pl. 56.1 Resp. ¶¶ 13-14.)  Walsh is a white female who was under the age of forty when she began as Training Director.  (Compl. ¶¶ 9-10, 14.)  Walsh directly supervised a staff of approximately seven employees, including plaintiff.  As Training Director, Walsh had responsibility for reviewing and approving her subordinates' requests for time off from work using the DHMH's electronic "Citytime System."  (Walsh Decl. at 2.)

Beginning in late 2008, plaintiff's supervisors began documenting instances in which plaintiff was late in arriving to work.  On November 17, 2008, Walsh and her supervisor, defendant Cathy Nonas, held a conference with plaintiff at which Walsh and Nonas "expressed [their] concern over [plaintiff's] persistent and consistent tardiness record."  (Walsh Decl. Ex. A.)  Nonas, Director of the DHMH's Physical Activity and Nutrition Program, is a white female born in 1951.  (Defs. 56.1 ¶ 5; Pl. 56.1 Resp. ¶ 5.)  On January 6, 2009, Walsh and Nonas again met with plaintiff to discuss further instances in which plaintiff had arrived late to work.  (Defs. 56.1 ¶¶ 14-15; Pl. 56.1 Resp. ¶¶ 14-15.)  During this meeting, Walsh and Nonas provided plaintiff with a written memorandum reporting that plaintiff had been late in arriving to work ten of the previous thirty-two work days.  (Defs. 56.1 ¶¶ 14-15; Pl. 56.1 Resp. ¶¶ 14-15; Walsh Decl. Ex. A.)  The memorandum noted the November 17, 2008 conference and reiterated the departmental attendance standards, which required all employees to request vacation or personal time in advance.  (Walsh Decl. Ex. A.)

---

[1] Plaintiff refers to Rhonda Walsh as Rhonda Johnson— the surname she used at the time of the events at issue. (Frishberg Decl. at 1.)  All references to this defendant herein are to her current surname, Walsh.

II.     Plaintiff's Incident with Defendant Walsh on February 11, 2009

       On the morning of February 9, 2009, plaintiff left a voicemail message with Walsh informing her that his apartment required emergency repairs and that plaintiff would therefore be absent from work on February 9 and 10.  (Defs. 56.1 ¶ 16; Pl. 56.1 Resp. ¶ 16.) Plaintiff did not come into work either day.  Plaintiff returned on February 11 and used the DHMH's electronic attendance system to submit a request that his two-day absence be counted as "sick leave" as opposed to vacation or "comp" time.  (Defs. 56.1 ¶ 17; Pl. 56.1 Resp. ¶ 17.) Upon noticing this request, defendants Walsh and Nonas conferred and agreed that plaintiff should instead characterize his two-day absence as vacation time.  (Walsh Decl. Ex. C; Defs. 56.1 ¶¶ 17-18; Pl. 56.1 Resp. ¶¶ 17-18.)  Walsh and Nonas further agreed that Walsh, as plaintiff's direct supervisor, should tell plaintiff in person that he needed to do so.  (Walsh Decl. Ex. C.)

       The ensuing encounter between plaintiff and Walsh forms the basis for plaintiff's eventual termination and, ultimately, the present lawsuit.  On the afternoon of February 11, Walsh approached plaintiff at his desk.  Plaintiff's desk is located within a cubicle, which contains a file cabinet and is clustered with other employees' cubicles in the middle of the office. (Defs. 56.1 ¶ 18; Pl. 56.1 Resp. ¶ 18; Walsh Decl. at 3.)  Walsh told plaintiff that he needed to record his absences on February 9 and 10 as vacation time and not as sick leave.  In response, plaintiff stood up and raised his voice, proclaiming "this is bullshit" and that he was "sick of hearing about everyone else in the office."  (Defs. 56.1 ¶ 19; Pl. 56.1 Resp. ¶ 19.)[2]  The specific events that transpired thereafter are disputed between the parties.  Accepting plaintiff's version as true, Walsh took several steps backward as plaintiff pushed his chair away from his body.

---

[2] Plaintiff does not dispute that he raised his voice to defendant Walsh, adding only that he did not raise his voice "any louder than" did Walsh during the encounter.  (Pl. 56.1 Resp. ¶ 19.)

(Defs. 56.1 ¶¶ 19-20; Pl. 56.1 Resp. ¶¶ 19-20.)  As Walsh backed away from plaintiff's cubicle,

she asked plaintiff to "get out of [her] face."  (Defs. 56.1 ¶ 20; Pl. 56.1 Resp. ¶ 20; Aff. Frishberg

Ex. 1 ("Walsh Dep.") at 34.)  Walsh reiterated that defendant Nonas required plaintiff to mark

his absence as vacation time before leaving plaintiff's cubicle.  (Brown Decl. ¶ 9.)

   Later that afternoon, Walsh drafted a memorandum to Nonas.  In it, Walsh

described her version of the events and listed the names of seven witnesses whom Walsh

believed had observed the incident.  (Walsh Decl. at 4.)  One of those witnesses was Brendan

Delaney, a Director of Administration with the DHMH.  After speaking privately with Walsh

that afternoon, Delaney wrote a memorandum in which he confirmed that plaintiff had raised his

voice and stated "this is bullshit" to Walsh.  (Silver Decl. Ex. G.)  Delaney also wrote that Walsh

appeared "visible shaken and upset" following the incident and that she left the office for some

"fresh air" following their conversation.  (Id.)  Delaney submitted his memorandum to defendant

Silver later that same day.[3]  After receiving Delaney's memorandum, Silver investigated the

February 11 incident.  Although Silver did not speak with plaintiff (Brown Decl. ¶ 15), she

discussed the incident with Delaney, Walsh, and several other staff members "seated in the

vicinity" of plaintiff's cubicle.  (Silver Dep. at 35.)  Silver then referred the matter to the

Employment Law Unit for "appropriate disciplinary action."  (Silver Decl. at 4.)

   On February 12, 2009, Rose Tessler, the Director of the Employment Law Unit of

the DHMH, informed plaintiff in a written memorandum that he would be suspended without

pay.  (Defs. 56.1 ¶ 25; Pl. 56.1 Resp. ¶ 25; Wangle Decl. Ex. A.)  Plaintiff received a second

letter on February 12 that charged plaintiff with violating two rules of the DHMH Standards of

Conduct: Rule 3.25 for "[c]onduct prejudicial to good order and discipline," and Rule 3.8 for

---

[3] Plaintiff disputes that Delaney "was in a position to see the entire event" and notes that Delaney later refused to
acknowledge where he was standing when the events transpired.  (Pl. 56.1 Resp. ¶ 21.)  On this motion, I will not
consider Delaney's statements detailing what he saw of the incident.

"[t]hreatening or intimidating a superior, fellow employee, or private citizen." (Wangle Decl.

Ex. B.) The February 12 letter elaborated on the charges, explaining that on February 11

plaintiff "positioned [him]self directly over [defendant Walsh]," "raised [his] voice," and made

the following three statements:

- I am sick of hearing about everyone else in the office!
- This is bullshit!
- Don't compare me to other people!

(Id.; Defs. 56.1 ¶ 27; Pl. 56.1 Resp. ¶ 27.) Defendant Walsh "felt extremely threatened," took "a

few steps backward," and asked plaintiff to "get out of her face." (Defs. 56.1 ¶ 27; Pl. 56.1 Resp.

¶ 27.) Plaintiff then pushed his chair and raised his voice again before Walsh advised plaintiff to

speak with another supervisor. (Wangle Decl. Ex. B.)

   III.  <u>Plaintiff's Disciplinary Proceedings and Subsequent Termination</u>

    The DHMH instituted disciplinary proceedings against plaintiff based upon the

charges set forth in Ms. Tessler's February 12 letter. Pursuant to "Step I" of the departmental

procedures, an "Informal Conference" took place on February 18 attended by plaintiff, a

representative from plaintiff's union, the Communication Workers of America, and Michael

Aragon, an "Informal Conference Leader" with the DHMH. (Defs. 56.1 ¶¶ 26-27; Pl. 56.1 Resp.

¶¶ 26-27; Wangle Decl. Ex. B.) Following the conference, Aragon issued a written "Notice of

Determination" in which he recommended plaintiff's termination and advised plaintiff of his

right to appeal. (Defs. 56.1 ¶ 28; Pl. 56.1 Resp. ¶ 28; Wangle Decl. Ex. C.)

    Plaintiff appealed the recommendation of the "Informal Conference Leader" and a

Step II hearing was held on March 16, 2009. (Defs. 56.1 ¶¶ 29-31; Pl. 56.1 Resp. ¶¶ 29-31.)

The Step II Hearing Officer received testimony from Walsh, Brendan Delaney, plaintiff, and

plaintiff's union representative. (Wangle Decl. Ex. D.) Walsh testified that plaintiff "raised his

voice" and that she felt threatened and intimidated by plaintiff's behavior.  (Id.)  Plaintiff

testified that Walsh asked him "in a disrespectful way" why he had not submitted his absence

from work correctly, and that in response, plaintiff behaved "inappropriate[ly]" despite not

intending to threaten Walsh or "do her any harm."  (Id.)  The Step II Hearing Officer found that

based on the charges and the evidence presented at the hearing, plaintiff's behavior "was

intimidating and threatening."  In a written decision dated March 16, 2009, the Hearing Officer

concurred with the Step 1 Informal Conference Leader's recommendation that plaintiff be

terminated.  (Defs. 56.1 ¶¶ 29-31; Pl. 56.1 Resp. ¶¶ 29-31; Wangle Decl. Exs. D, E.)

        Plaintiff appealed the Step II Hearing Officer's decision to the City of New

York's Office of Labor Relations ("OLR").  (Defs. 56.1 ¶ 32; Pl. 56.1 Resp. ¶ 32; Pl.'s Dep. at

78-80.)  The OLR conducted a Step III hearing on January 26, 2010, which plaintiff and his

union representative attended.  (Defs. 56.1 ¶ 33; Pl. 56.1 Resp. ¶ 33; Walsh Decl. Ex. F.)  The

Step III Hearing Officer determined that the DHMH did not violate its contract with plaintiff's

union in terminating plaintiff and that the evidentiary record confirmed plaintiff's behavior as

"threatening and intimidating."  (Walsh Decl. Ex. F.)  In a May 26, 2010 memorandum

reviewing the Step III Hearing Officer's determination, the OLR determined that the evidentiary

record "specifically" revealed that plaintiff "positioned himself over his supervisor, raised his

voice[,] and made three inappropriate statements to her."  (Id.)  The memorandum further noted

that plaintiff "forcefully pushed his chair" during the incident and that plaintiff later admitted in

an e-mail that he had acted inappropriately.  (Id.)  Accordingly, the OLR denied plaintiff's

grievance and upheld the Step III determination.  (Defs. 56.1 ¶¶ 34-37; Pl. 56.1 Resp. ¶¶ 34-37;

Walsh Decl. Ex. F.)

While the DHMH proceedings were underway, plaintiff sought relief from the Equal Employment Opportunity Commission ("EEOC").  Specifically, plaintiff filed an EEOC Intake Questionnaire in May 2009, alleging discrimination on the part of DHMH on account of his race, age, and gender.  (Defs. 56.1 ¶ 38; Pl. 56.1 Resp. ¶ 38; Waters Decl. Ex. E.)  Following its investigation, the EEOC issued a Dismissal and Notice of Rights on December 31, 2009.  (Waters Decl. Ex. F.)  The dismissal advised plaintiff that after investigating his claim, the EEOC was "unable to conclude that" plaintiff had shown that the DHMH had violated Title VII or the ADEA.  (Id.)  Plaintiff commenced the present suit by filing his Complaint on April 12, 2010.  (Docket # 1.)

## SUMMARY JUDGMENT STANDARD

Summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Rule 56(a), FED. R. CIV. P.  It is the initial burden of a movant on a summary judgment motion to come forward with evidence on each material element of his claim or defense, demonstrating that he or she is entitled to relief.  The evidence on each material element must be sufficient to entitle the movant to relief in its favor as a matter of law.  Vt. Teddy Bear Co. v. 1–800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004).  In raising a triable issue of fact, the non-movant carries only "a limited burden of production," but nevertheless "must 'demonstrate more than some metaphysical doubt as to the material facts,' and come forward with 'specific facts showing that there is a genuine issue for trial.'"  Powell v. Nat'l Bd. of Med. Exam'rs, 364 F.3d 79, 84 (2d Cir. 2004) (quoting Aslanidis v. U.S. Lines, Inc., 7 F.3d 1067, 1072 (2d Cir. 1993)).

A fact is material if it "might affect the outcome of the suit under the governing law."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  An issue of fact is genuine "if

the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. This Court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in its favor, and may grant summary judgment only when no reasonable trier of fact could find in favor of the non-moving party. Costello v. City of Burlington, 632 F.3d 41, 45 (2d Cir. 2011); accord Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 585-88 (1986). In reviewing a motion for summary judgment, the Court may scrutinize the record and grant or deny summary judgment as the record warrants. Rule 56(c), FED. R. CIV. P. In the absence of any disputed material fact, summary judgment is appropriate. See id.

In opposing a motion for summary judgment, a party "does not show the existence of a genuine issue of fact to be tried merely by making assertions that are conclusory or based on speculation." Major League Baseball Props., Inc. v. Salvino, Inc., 542 F.3d 290, 310 (2d Cir. 2008); see also Anderson, 477 U.S. at 249-50 (noting that summary judgment may be granted if the evidence is "merely colorable" or "not significantly probative" (internal citations omitted)). Rather, the opposing party's facts "must be material and of a substantial nature, not fanciful, frivolous, gauzy, spurious, irrelevant, gossamer inferences, conjectural, speculative, nor merely suspicions." Contemporary Mission, Inc. v. U.S. Postal Serv., 648 F.2d 97, 107 n.14 (2d Cir. 1981) (internal quotations omitted).

Although discrimination claims typically involve questions of intent that are ill-suited to resolution at the summary judgment stage, the Second Circuit has gone "out of [its] way to remind district courts that the 'impression that summary judgment is unavailable to defendants in discrimination cases is unsupportable.'" Weinstock v. Columbia Univ., 224 F.3d 33, 41 (2d Cir. 2000) (quoting McLee v. Chrysler Corp., 38 F.3d 67, 68 (2d Cir. 1994)), cert. denied, 540 U.S. 811 (2003). "[T]rial courts should not treat discrimination differently from other ultimate

questions of fact." <u>Reeves v. Sanderson Plumbing Prods., Inc.</u>, 530 U.S. 133, 148 (2000)

(internal quotations omitted).  Accordingly, "even in the discrimination context," a plaintiff must

offer "more than conclusory allegations" to survive a motion for summary judgment.  <u>Gorzynski</u>

<u>v. JetBlue Airways Corp.</u>, 596 F.3d 93, 101 (2d Cir. 2010).

DISCUSSION

Plaintiff claims that the defendants terminated him on the basis of his age, race,

and gender in violation of the ADEA, Title VII, 42 U.S.C. §§ 1981 and 1983, the Equal

Protection Clause and the Due Process Clause of the Fourteenth Amendment, and the NYSHRL

and NYCHRL.

I.      <u>Summary Judgment Is  Granted as to Plaintiff's Claim of Age Discrimination</u>

Plaintiff alleges that his termination following the incident on February 11, 2009

was the result of unlawful age discrimination under the ADEA.  (Compl. ¶ 51.)  The ADEA

makes it "unlawful for an employer . . . to fail or refuse to hire or to discharge any individual or

otherwise discriminate against any individual with respect to his compensation, terms,

conditions, or privileges of employment, because of such individual's age."  29 U.S.C. §

623(a)(1).  This Court analyzes plaintiff's ADEA claim utilizing the <u>McDonnell Douglas</u>

framework for discrimination claims as modified by the Supreme Court's holding in <u>Gross v.</u>

<u>FBL Financial Services</u>, 129 S. Ct. 2343 (2009).  See <u>Gorzynski v. Jetblue Airways Corp.</u>, 596

F.3d 93, 105-07 (2d Cir. 2010).[4]

<u>McDonell Douglas v. Green</u>, 411 U.S. 792 (1973), articulates a three-step

framework for analyzing discrimination claims.  The plaintiff bears the initial burden of

---

[4] To the extent that plaintiff seeks to invoke the NYSHRL and NYCHRL in asserting a claim of age discrimination, this Court analyzes such allegations under the same <u>McDonnell Douglas</u> framework.  See <u>id.</u> at 106 n.1 ("The law governing ADEA claims has been held to be identical to that governing claims made under the NYHRL."); <u>Tomassi v. Insignia Fin. Grp., Inc.</u>, 478 F.3d 111, 115 n.3 (2d Cir. 2007) ("[A]ge-discrimination claims under the ADEA, NYSHRL, and NYCHRL are analyzed under the same standard . . . .").

10

establishing a prima facie case of discrimination.  See id. at 802-03.  Where the alleged

discrimination was based on age, the plaintiff must show that: (1) he was a member of the

protected age group; (2) he was qualified for the position he held; (3) he experienced an adverse

employment action; and (4) the adverse employment action occurred under circumstances that

give rise to an inference of discrimination.  JetBlue, 596 F.3d at 105-07.  The plaintiff's burden

in establishing a prima facie case is "not a heavy one."  Id. at 107 (citing Carlton v. Mystic

Transp., Inc., 202 F.3d 129, 134 (2d Cir. 2000)).  If the plaintiff establishes a prima facie case,

the burden shifts to the defendant to articulate a legitimate, nondiscriminatory basis for its

actions.  Tex. Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 252-53 (1981).  Assuming the

defendant meets its burden, the burden shifts back to the plaintiff to prove that the reasons

proffered by the defendant were merely pretextual.  See Isaac v. City of N.Y., 701 F. Supp. 2d

477, 486 (S.D.N.Y. 2010) (citing Burdine, 450 U.S. at 253).  In allegations of age discrimination

under the ADEA, the plaintiff must prove by a preponderance of the evidence that his age was a

"but for" cause for the defendant's adverse employment action.  See JetBlue, 596 F.3d at 106-07.

          This Court assumes arguendo that plaintiff has met his burden of establishing a

prima facie case of age discrimination under the first step of the McDonnell Douglas framework.

First, it is undisputed that plaintiff was over forty years of age when the defendants terminated

his employment and therefore falls within the protected class of the ADEA.  (Defs. 56.1 ¶ 2; Pl.

56.1 Resp. ¶ 2.)  Nor do the parties dispute that he was qualified for the position he held as

Training Coordinator; defendant Silver approved his promotion to the position in January 2007

(Defs. 56.1 ¶¶ 10-12; Pl. 56.1 Resp. ¶¶ 10-12), and plaintiff held the position until February

2009.  Third, plaintiff suffered an adverse employment action when the DHMH terminated his

employment on March 16, 2009.  See Leibowitz v. Cornell Univ., 584 F.3d 487, 499 (2d Cir.

2009) (recognizing that an adverse employment action includes "termination of employment").

Accordingly, plaintiff need only establish that his termination occurred under circumstances

giving rise to an inference of age discrimination to meet his "de minumus" burden under step one

of the McDonnell Douglas framework.  See Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir.

2009).

       Viewed generously, plaintiff has presented sufficient evidence from which to

infer discrimination in violation of the ADEA.  Walsh was under forty years old at the time of

the incident (compl. ¶¶ 9-10, 14); plaintiff alleges that defendant Nonas suggested plaintiff

transfer to the DHMH's Brooklyn office where he would be more comfortable without "the

differences" (id. ¶ 44); and plaintiff further contends that Nonas referred to him as "old man" on

at least one occasion (id. ¶ 43).  This Court assumes for the purposes of this motion that plaintiff

has met his de minimus burden of setting forth circumstances surrounding his firing that give rise

to an inference of discrimination.  As such, plaintiff has demonstrated a prima facie case of

discrimination.

       The burden thus shifts to the defendants to proffer a legitimate, non-

discriminatory reason for terminating plaintiff.  See JetBlue, 596 F.3d at 107.  This burden is

"one of production, not persuasion," and thus involves "no credibility assessment" by the Court.

Reeves v. Sanderson Plumbing Prods., Inc., 530 U.S. 133, 142 (2000) (internal quotations

omitted).

       Here, defendants have offered a legitimate and non-discriminatory reason for

terminating plaintiff, i.e., the February 11, 2009 incident.  Undisputed evidence in the record

demonstrates that in response to a question from Walsh, his direct supervisor, plaintiff raised his

voice, stated "this is bullshit," and pushed his chair in a manner that made Walsh feel threatened

and intimidated.  (Defs. 56.1 ¶¶ 18-20; Pl. 56.1 Resp. ¶¶ 18-20.)  Following a hearing, a Step II

Hearing Officer issued a written determination terminating plaintiff based on his "intimidating

and threatening" behavior.  (Defs. 56.1 ¶¶ 29-30; Pl. 56.1 Resp. ¶¶ 29-30.)  In terminating

plaintiff, the Step II determination letter specifically referred to two rules of the DHMH

Standards of Conduct that plaintiff violated during the incident: "[c]onduct prejudicial to good

order and discipline" and "[t]hreatening or intimidating a supervisor, fellow employee, or private

citizen."  (Wangle Decl. Ex. D.)  The defendants have met their burden of proffering a

legitimate, non-discriminatory reason for terminating plaintiff under the McDonnell Douglas

framework.[5]

        Accordingly, the presumption in favor of discrimination is erased and the burden

now shifts back to plaintiff to prove that the defendants' non-discriminatory reason was merely a

pretext for age discrimination.  See Reeves, 530 U.S. at 143.  This burden on plaintiff is higher

than that required to establish a prima facie case of discrimination; a plaintiff's "initially vague

allegation of discrimination" must be "increasingly sharpened and focused" at the third stage of

the McDonnell Douglas framework.  Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir. 1985)

(affirming summary judgment in favor of defendant).  To meet this burden, plaintiff must show

"both that the [defendants'] reason was false, and that discrimination was the real reason."  St.

Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 515 (1993) (emphasis in original).  Plaintiff does not

prove liability unless "the protected trait (under the ADEA, age) actually motivated the

employer's decision."  Reeves, 530 U.S. at 141.  As discussed above, a plaintiff claiming

---

[5] It is an employer's motivation, rather than the truth or falsity of the underlying reason for termination, which controls.  See McPherson v. N.Y. City Dep't of Educ., 457 F.3d 211, 216 (2d Cir. 2006).  Furthermore, in a case such as the present one where "a plaintiff has been terminated for misconduct, the question is not 'whether the employer reached a correct conclusion in attributing fault [to the plaintiff] . . ., but whether the employer made a good-faith business determination.'"  Koleskinow v. Hudson Valley Hosp. Ctr., 622 F. Supp. 2d 98, 111 (S.D.N.Y.2009) (quoting Baur v. Rosenberg, Minc, Falkoff & Wolff, 2008 WL 5110976, at *5 (S.D.N.Y. Dec. 2, 2008)).

disparate treatment under the ADEA must prove by a preponderance of the evidence that age

was the "but-for" cause of the adverse decision—not just a contributing or motivating factor.

JetBlue, 596 F.3d at 107 (citing Gross, 129 S. Ct. at 2351).

> Plaintiff has failed to offer evidence that would permit a reasonable juror to find
that defendants' reason for terminating plaintiff was a mere pretext for age discrimination.  In
none of plaintiff's submissions nor anywhere else in the record has plaintiff offered specific facts
demonstrating that defendants' true motivation in terminating him was his age and not his
misconduct on February 11, 2009.  Plaintiff offered the following testimony at his deposition:

> Q.    How specifically do you believe you were treated
> differently as a result of th[e February 11, 2009] conflict?

> A.    I was terminated.

> . . .

> Q.    What specific acts of discrimination do you believe were
> taken against you based upon your age?

> A.    I don't think that the distinctions of age, race, and gender
> are different.  I think that it was all—I don't think there was
> a clear line of demarcation that separates them from the
> treatment.

> . . .

> Q.    What specific treatment are you claiming was taken against
> you because of your age?

> A.    Without looking, I can't recall all of it now.

(Pl.'s Dep. at 50-51, 55; see also id. at 55-58.)  Plaintiff has not come forward with facts, which

if believed, would support the conclusion that defendants terminated him for his age.  Plaintiff's

subjective believe that his behavior was not sufficiently intimidating or threatening enough to

warrant termination does not establish that his age was a but for cause for his termination.  Isaac,

701 F. Supp. 2d at 489 (granting summary judgment on ADEA discrimination claim where plaintiff offered only his subjective belief that he was better-suited for a promotion than were other candidates). Plaintiff cannot rest on allegations that his employers failed to reach the "correct conclusion" in terminating him for misconduct, Koleskinow, 622 F. Supp. 2d at 111, but must demonstrate that they were actually motivated by discriminatory animus in doing so. See McPherson, 457 F.3d at 216.

        Moreover, plaintiff fails to draw this Court's attention to any instances wherein similarly situated employees who were under forty were not terminated for similar misconduct. Indeed, defendant Silver, the Assistant Commissioner of the DHMH's Bureau of Chronic Disease Prevent and Control and the person responsible for authorizing plaintiff's termination, testified that at no time between 2004 and 2011 were there any "incidents of similar misconduct or incidents of similar gravity involving any employees." (Silver Decl. ¶ 20.)

        Plaintiff's allegation that defendant Nonas referred to him as "old man" on at least one occasion and suggested he might be "more comfortable" at another DHMH office would not alone or in combination with other evidence permit a reasonable fact finder to find in his favor. As a general matter, "all comments pertaining to a protected class are not equally probative of discrimination." Tomassi, 478 F.3d at 115. Indeed, "evidence of one stray comment by itself is usually not sufficient proof to show age discrimination." Carlton v. Mystic Transp., Inc., 202 F.3d 129, 136 (2d Cir. 2000). "[T]he more remote and oblique the remarks are in relation to the employer's adverse action, the less they prove that the action was motivated by discrimination." Tomassi, 478 F.3d at 115. Here, defendant Nonas older than plaintiff (Defs. 56.1 ¶ 5; Pl. 56.1 Resp. ¶ 5), and plaintiff has proffered no evidence that Nonas was present during the February 11, 2009 incident with Walsh, played a role in referring the matter to the Employment Law Unit

for disciplinary action, or recommended plaintiff's termination in any written memorandum or at any of plaintiff's three oral hearings.  "[R]emarks made by someone other than the person who made the decision adversely affecting the plaintiff may have little tendency to show that the decision-maker was motivated by the discriminatory sentiment expressed in the remark." Tomassi, 478 F.3d at 115.

   Moreover, the "same actor" inference is appropriate as to defendant Silver.  The same actor inference arises from the rationale that "when the person who made the decision to fire was the same person who made the decision to hire, it is difficult to impute to her an invidious motivation that would be inconsistent with the decision to hire."  Grady v. Affiliated Cent., Inc., 130 F.3d 553, 560 (2d Cir. 1997).  While such an inference may not be warranted in all cases, it is in cases such as this one, "especially . . . when the firing has occurred only a short time after the hiring."  Id.  Silver—also over forty years old at the time of the events at issue (Silver Decl. ¶ 3)—was directly responsible for approving the creation of the Training Coordinator position and plaintiff's subsequent promotion into that position—a promotion that resulted in a nearly $11,000 raise.  (Defs. 56.1 ¶¶ 10-12; Pl. 56.1 Resp. ¶¶ 10-12.)

   Viewing the record as a whole and drawing all reasonable inferences in favor of the plaintiff, this Court concludes that no reasonable jury could find that the legitimate reasons offered by the defendants for terminating plaintiff were a pretext for age discrimination.  Despite having a full opportunity to conduct factual discovery, plaintiff's submissions consist of "vague allegations" of discrimination insufficient to meet his burden under step three of the McDonnell Douglas framework.  See Meiri v. Dacon, 759 F.2d 989, 995 (2d Cir. 1985).  Plaintiff's claims for age discrimination are therefore dismissed.

II.   Summary Judgment Is Granted as to Plaintiff's Claims Under Title VII, Section
      1981, Section 1983, the Equal Protection Clause, NYSHRL, and NYCHRL

Plaintiff also alleges that the defendants terminated him on the basis of his race

and gender in violation of Title VII, section 1981, section 1983, the Equal Protection Clause, and

the NYSHRL and NYCHRL.  (Compl. ¶ 51.)  Title VII of the Civil Rights Act of 1964 prohibits

employers from discriminating against an individual on the basis of "race, color, religion, sex, or

national origin," but it does not encompass claims based on general animus or hostility.  42

U.S.C. § 2000e–2(a).  "The substantive standards applicable to claims of employment

discrimination under Title VII" are "generally applicable to claims of employment

discrimination brought under § 1981, the Equal Protection Clause, and the NYSHRL."  Vivenzio

v. City of Syracuse, 611 F.3d 98, 106 (2d Cir. 2010).  Where the NYCHRL's language is

ambiguous, this Court construes it more liberally than either the federal standards or the

NYSHRL.  See Williams v. N.Y. City Housing Auth., 61 A.D.3d 62, 66-67 (1st Dep't 2009)

("[I]nterpretations of state or federal provisions worded similarly to City HRL provisions may be

used" only when viewed "as a floor below which the City's Human Rights law cannot fall.").

Nevertheless, the NYCHRL does not alter "the kind, quality or nature of evidence that is

necessary to support or defeat a motion for summary judgment under Rule 56."  Winston v.

Verizon Servs. Corp., 633 F. Supp. 2d 42, 49 (S.D.N.Y. 2009).  A plaintiff asserting an

NYCHRL claim must still show "by a preponderance of the evidence that she has been treated

less well than other employees" due to plaintiff's protected status.  Williams, 61 A.D.3d at 78.

In analyzing plaintiff's claims of race and gender discrimination under Title VII,

section 1981, the Equal Protection Clause, and the New York State and City Human Rights

Laws, this Court utilizes the McDonnell Douglas burden-shifting framework.  See Mandell v.

Cnty. of Suffolk, 316 F.3d 368, 377 (2d  Cir. 2003) (analyzing plaintiff's discrimination claims

17

under Title VII, the NYSHRL, and NYCHRL together); Vivenzio, 611 F.3d at 106 (applying

McDonnell Douglas framework to claim of discrimination brought under Title VII, section 1981,

and the NYSHRL).  This Court also scrutinizes plaintiff's claim under section 1983 using the

same burden-shifting analysis.  See St. Mary's Honor Ctr. v. Hicks, 509 U.S. 502, 506 n.1 (1993)

(upholding application of McDonnell Douglas framework to section 1983 employment

discrimination claims).

      As discussed in regards to plaintiff's claim of age discrimination, plaintiff bears

the initial burden of establishing a prima facie case of discrimination under McDonnell Douglas.

To do so, plaintiff must show that: (1) he was a member of a protected class; (2) he was qualified

for the position he held; (3) he experienced an adverse employment action; and (4) the adverse

employment action occurred under circumstances that give rise to an inference of discrimination.

Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009).  The plaintiff's burden here is

"minimal."  Id.  If the plaintiff establishes a prima facie case, the burden shifts to the defendants

to articulate a legitimate, nondiscriminatory basis for their actions.  Tex. Dep't of Cmty. Affairs

v. Burdine, 450 U.S. 248, 252-53 (1981).  Finally, the burden shifts back to plaintiff to prove by

a preponderance of the evidence that the reasons proffered by the defendants were merely

pretextual.  Id.

      Plaintiff asserts Title VII discrimination claims against both the City of New York

as well as defendants Walsh, Nonas, and Silver in their individual capacities.  However,

"[i]ndividuals are not subject to liability under Title VII."  Sassaman, 566 F.3d at 315-16

(quoting Patterson v. Cnty. of Oneida, 375 F.3d 206, 221 (2d Cir. 2004)).  Accordingly, the Title

VII claims against defendants Walsh, Silver, and Nonas are dismissed.

In deciding plaintiff's remaining claims of race and gender discrimination, this Court assumes arguendo that plaintiff has made out a prima facie case of discrimination.  First, it is uncontested that plaintiff is an African-American male who held the position of Training Coordinator for nearly two years prior to his termination.  Defendants terminated plaintiff, constituting an adverse employment action.  See Leibowitz v. Cornell Univ., 584 F.3d 487, 499 (2d Cir. 2009).

To complete his prima facie case, plaintiff must show circumstances giving rise to an inference of discrimination based on his race or gender.  Plaintiff offers the following as evidence of gender discrimination: as of December 2009, 14% of all employees of the DHMH's Bureau of Chronic Disease Prevention and Control (the "Bureau") were male (Pl.'s Mem. Opp. at 11; Buckley Decl. ¶ 9); defendant Silver hired ten staff members during her seven-year tenure at DHMH, nine of whom were female (Pl.'s Mem. Opp. at 10-11; Silver Dep. at 17-26); and an unsupported allegation that three other female employees were "allowed to arrange their hours as they chose, as long as they completed their work."  (Pl.'s Mem. Opp. at 10.)  Plaintiff asserts that the "skewed" ratio of male to female employees coupled with the employees hired by Silver give rise to an inference of gender discrimination.  (Id. at 11.)  Considering this evidence as well as plaintiff's remaining allegations in his Complaint, this Court assumes arguendo that plaintiff has adduced sufficient facts to indicate circumstances from which a reasonable juror could infer that plaintiff's termination was the result of gender discrimination.

Construing plaintiff's Complaint and submissions generously, this Court also assumes arguendo that plaintiff has made a prima facie case of race discrimination.  Plaintiff alleges in his Complaint that unidentified "white women under forty . . . were permitted to arrive late without being reprimanded" and that "whites [sic] women" employed with the DHMH were

not subject to "like adverse employment actions."  (Compl. ¶¶ 27, 46.)  Plaintiff adds in a later submission that after admittedly raising his voice and exclaiming "this is bullshit," Walsh "protested Plaintiff's supposed closeness . . . using an imitation of black vernacular."  (Pl.'s Mem. Opp. at 10.)  For the purposes of defendants' summary judgment motion, this Court assumes without deciding that such allegations are sufficient to state a prima facie case of race discrimination.

Accordingly, the burden shifts to the defendants to offer evidence that plaintiff was terminated for "a legitimate, nondiscriminatory reason."  Holcomb v. Iona Coll., 521 F.3d 130, 140 (2d Cir. 2008) (citing Burdine, 450 U.S. at 254).  Under this step of the McDonnell Douglas framework, the defendants "need not persuade the [C]ourt that [they] w[ere] actually motivated by the proffered reasons."  Burdine, 450 U.S. at 253.

Defendants have satisfied their burden of offering a legitimate, nondiscriminatory reason for terminating plaintiff.  As discussed above, the record contains uncontested evidence that plaintiff raised his voice and stated "this is bullshit" to his direct supervisor, making her feel threatened and intimidated.  (Defs. 56.1 ¶¶ 18-20; Pl. 56.1 Resp. ¶¶ 18-20.)  Plaintiff admitted doing so in his deposition.  (Pl.'s Dep. at 74.)  Thereafter, plaintiff attended a series of hearings from which the DHMH terminated him based on "intimidating and threatening" behavior toward Walsh, citing the DHMH's Standards of Conduct.  (Defs. 56.1 ¶¶ 29-30; Pl. 56.1 Resp. ¶¶ 29-30; Wangle Decl. Ex. D.)  Accordingly, the defendants have met their burden under step two of the McDonnell Douglas analysis.

Plaintiff has had a full and fair opportunity to conduct discovery yet has failed to produce any evidence that his termination was a pretext for gender or race discrimination under the third step of this Court's analysis.  Plaintiff has not produced "sharpened and focused" facts

showing the real motivation for his termination was race or gender and not his threatening and

intimidating behavior toward Walsh on February 11, 2009.  Meiri v. Dacon, 759 F.2d 989, 995

(2d Cir. 1985).  Rather, plaintiff offered the following testimony during his deposition:

> Q.    What specific treatment are you referring to based upon
> your race or gender that you did not see other people
> receiving the same treatment?
>
> A.    I think it just ends in my termination and the specifics more
> than that, I can't recall at that time.
>
> . . .
>
> Q.    So other than the fact that you were terminated, is there any
> [sic] anything else, any other treatment that you received
> based upon your age, race or gender that you did not see
> other people being treated similarly?
>
> A.    Not that I can recall.

(Pl.'s Dep. at 59.)  Specifically in support of his allegation of racial discrimination, plaintiff

testified:

> Q.    How do you believe that you were discriminated against
> based upon your race?
>
> A.    I saw a different level of treatment between myself and my
> co-workers who were not of the same race.
>
> Q.    If you could just explain specifically what difference in
> treatment you are referring to?
>
> A.    I think—I had a conflict with the supervisor, I was
> terminated for that conflict; I don't think the same thing
> would have happened to co-workers of the same race.
>
> . . .
>
> Q.    So other than your belief that other people would not have
> been treated the same way, is there anything else that leads
> you to believe that you were discriminated against based
> upon your race?

A.      I think that's enough.

(Id. at 50-51.)

Construing the facts in the record in their most favorable light to plaintiff, this Court concludes that no reasonable jury could find that the defendants' termination was a pretext for race or gender discrimination.  Plaintiff testified that he was terminated, but has not adduced any specific facts showing how other similarly situated employees of different races or genders who engaged in similar misconduct to plaintiff were not terminated.  Indeed, defendant Silver testified that in her seven years working as a supervisor in the City's civil service, she had never seen an "employee act that way with an[other] employee" and that it was "the only incident of that severity that [she] had on [her] staff in the past seven years."  (Silver Dep. at 36-37.)

Plaintiff's evidence of discriminatory pretext consists entirely of his termination coupled with evidence that his supervisors and co-employees were of a different race and gender. Despite a full and fair opportunity to conduct discovery, plaintiff's bare allegations of disparate treatment are no more substantial than those contained in his initial Complaint.  Although this Court credits plaintiff's assertions that 86% of the DMHM Bureau's employees were female and that Silver, in her role as Assistant Commissioner, hired mostly female staff members during her tenure (Pl.'s Mem. Opp. at 11; Buckley Decl. ¶ 9), bare statistics standing alone do not raise a genuine issue of fact upon which a reasonable fact finder could conclude that plaintiff's termination was the result of discriminatory animus.  See Brown v. Coach Stores Inc., 163 F.3d 706, 712 (2d Cir. 1998) ("[U]nderrepresentation [of a protected group] might result from any number of factors."); see also Martin v. Citibank, N.A., 762 F.2d 212, 218 (2d Cir. 1985) ("[S]tatistical proof alone cannot ordinarily establish a prima facie case of disparate treatment under Title VII or § 1981.").  As this Court has stated, statistics that otherwise "might be

admissible as probative circumstantial evidence of discrimination are not enough to establish a genuine factual dispute." Bussey v. Phillips, 419 F.Supp. 2d 569, 583 (S.D.N.Y. 2006).

Lastly, plaintiff's conclusory assertion that "there was no investigation" into the February 11, 2009 incident is contradicted by uncontested facts contained in the record. (Pl.'s Dep. at 51.) Undisputed documentary evidence in the record shows that Silver interviewed several witnesses to the incidents who testified to either hearing or seeing plaintiff state "this is bullshit," "this is fucking bullshit," and generally raising his voice to Walsh. (Walsh Decl. Ex. C.; Wangle Decl. Ex. B.) Moreover, plaintiff admitted to receiving three separate hearings following the institution of formal proceedings—each with union counsel present on his behalf—which featured live testimony from plaintiff as well as those same witnesses. (Pl.'s Dep. at 75-80.)

"An employer does not violate Title VII when it takes adverse employment action against an employee to preserve a workplace environment that is governed by rules, subject to a chain of command, free of commotion, and conducive to the work of the enterprise." Matima v. Celli, 228 F.3d 68, 79 (2d Cir. 2000). Construing plaintiff's Complaint and the evidentiary record in the most favorable light and drawing all inferences in plaintiff's favor, this Court finds no genuine issue of material fact upon which a reasonable jury could conclude that defendants terminated plaintiff on the basis of his race or gender. Accordingly, defendants' motion to dismiss plaintiff's claims under Title VII, sections 1981 and 1983, the Equal Protection Clause, and the NYSHRL and NYCHRL are dismissed.

Because this Court dismisses all of plaintiff's claims under Rule 56, Fed. R. Civ. P., I need not reach the issues of whether any of the individual defendants had final policymaking authority and whether the City of New York is liable for the actions of its

employees under <u>Monell</u>-type theories.  <u>Monell v. Dep't of Soc. Servs.</u>, 436 U.S. 658 (1978);

<u>see, e.g.</u>, <u>Isaac v. City of N.Y.</u>, 701 F. Supp. 2d 477, 497 (S.D.N.Y. 2010) (declining to address

employment discrimination claims under § 1983 following complete dismissal of all claims

under Rule 56).

     III.     <u>Summary Judgment Is Granted as to Plaintiff's Due Process Claim</u>

     Plaintiff alleges that his termination violated his right to "due process of law

secured by the United States Constitution and the New York State Constitution."  (Compl. ¶ 51.)

Plaintiff does not specify in his Complaint whether the defendants deprived him of a substantive

or procedural right to due process.  In construing plaintiff's Complaint liberally and making all

reasonable inferences in his favor, this Court assumes that plaintiff seeks to invoke both prongs

of due process protection.

     Defendants are entitled to summary judgment as to plaintiff's due process claim.

In analyzing this claim, the Second Circuit has stated that "[t]he threshold issue is always

whether plaintiff has a property or liberty interest protected by the Constitution."  <u>Narumanchi v.</u>

<u>Bd. of Trustees of Ct. State Univ.</u>, 850 F.2d 70, 72 (2d Cir. 1988).  First, uncontested evidence

indicates that plaintiff was a provisional employee of the City of New York.  (Silver Decl. Ex.

C.; Waters Decl. Ex. C.)  A provisional employee has no legitimate expectation of continued

employment sufficient to constitute a protectable interest under either the U.S. or New York state

constitutions.  <u>Edwards v. City of N.Y.</u>, 2005 WL 3466009, at *19 (S.D.N.Y. Dec. 19, 2005)

(citing <u>Bd. of Regents of State Colls. v. Roth</u>, 408 U.S 564, 576-77 (1972)); <u>Preddice v.</u>

<u>Callanan</u>, 69 N.Y.2d 812, 813-14 (N.Y. 1987) ("[P]rovisional employees have no expectation of

tenure and rights attendant thereto . . . and therefore may be terminated at any time without

charges preferred, a statement of reasons given or a hearing held.").

Even if plaintiff enjoyed a protectable constitutional interest in his DHMH employment, he did not challenge his termination in a New York state-court proceeding under Article 78.  (Pl.'s Dep. at 8; Waters Decl. Ex. 8.)  Courts in this Circuit recognize such proceedings as sufficient to protect an aggrieved party's right against constitutional deprivations without due process of law.  See Glicksman v. N.Y. City. Env't Control Bd., 2008 WL 282124 (S.D.N.Y. Jan. 25, 2008), aff'd, 345 Fed. Appx. 688 (2d Cir. 2009).

Accordingly, plaintiff's claim that defendants deprived him of due process of law under the New York State and U.S. Constitution is dismissed.

CONCLUSION

For the reasons set forth above, defendants' motion for summary judgment is GRANTED.


SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
       November 29, 2011